IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DENNIS KOGOD,<br><br>Plaintiff,<br><br>v.<br><br>DAVITA, INC., DAVITA RX, LLC, DVA LABORATORY SERVICES, INC., d/b/a DAVITA LABS, TOTAL RENAL LABORATORIES, INC., RMS LIFELINE, INC., d/b/a LIFELINE VASCULAR ACCESS, REGAL MEDICAL GROUP, INC., and HERITAGE PROVIDER NETWORK,<br><br>Defendants. | Civil Action No. 17-cv-02611-PAB |

**RELATOR'S MOTION AND MEMORANDUM OF LAW
FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Relator Dennis Kogod moves this Court to order DaVita, Inc. ("DaVita") to pay Relator $14,112,953.03 in attorneys' fees and $523,534.78 in costs and expenses for Relator's successful prosecution of this case, which resulted in a $34,487,390 settlement with the Department of Justice ("DOJ").[1]

**INTRODUCTION**

Relator is entitled to reasonable attorneys' fees, costs and expenses in this case under the False Claims Act ("FCA"). Relator's fees and costs are justified by the challenges and complexities of pursuing this lengthy litigation, the investigation of broad and wide-ranging

---

[1] The supporting declaration is from Michael Ronickher ("Ronickher Decl."). Counsel's contemporaneous time records for the hours billed to this matter are attached to the Ronickher Decl. as Exs. 1 and 2.

1

fraud, the substantial assistance provided by Relator to the DOJ, the massive amount of documents produced in discovery, and the resulting multi-million dollar settlement.

## STATEMENT OF FACTS

### I. NATURE OF THE ACTION

Defendant DaVita is a for-profit, Fortune 500 company that provides kidney dialysis services through over 2,300 outpatient dialysis centers. Ronickher Decl. ¶ 8.

Relator is an experienced, senior healthcare executive who worked at DaVita for 11 years, during which time he held executive positions in various business divisions. *Id.* ¶ 13. After Relator separated from the company, he filed his original Complaint in October 2017, alleging DaVita had engaged in a number of fraudulent schemes related to: (i) its dealings with Fresenius Medical Group ("FMC"), one of its main competitors in the dialysis and pharmacy markets; (ii) furnishing kickbacks to physician owners of Vascular Access Centers ("VACs"); (iii) improper and illegal kickbacks to member physicians of Johns Hopkins' nephrology practice; and (iv) engaging in a fraudulent scheme with respect to a Medicare Managed Care (Medicare Part C) program. Dkt. No 1.

### II. COUNSEL OF RECORD

Relator retained Constantine Cannon LLP ("C|C") in January 2016. Ronickher Decl. ¶ 14. C|C is an internationally recognized law firm with offices in New York, San Francisco, and Washington, DC, specializing in whistleblower and antitrust litigation. Ronickher Decl. ¶¶ 137 - 143. C|C's lawyers are experienced and successful and have recovered for its clients more than $5 billion in damages and tens of billions more in injunctive relief. *Id.* ¶ 138. C|C's whistleblower lawyers have specialized experience and success in prosecuting cases such as this one. *Id.* ¶¶ 15, 141-143. In 2020 the firm's whistleblower practice was the first whistleblower practice to be recognized by LexisNexis' Law360 as a "Practice Group of the Year." *Id.* ¶ 139.

C|C represented the Relator from January 2016 through March 2024, when the partners then responsible for the matter left C|C to form their own boutique firm, Whistleblower Partners LLP ("Whistleblower Partners"). *Id.* ¶ 144. C|C has made a limited appearance in this forum to pursue Relator's attorneys' fees, costs and expenses. For purposes of this petition, C|C and Whistleblower Partners shall be collectively referred to as "Counsel."

### III. PROSECUTION OF THE ACTION

This case required eight years of work. That work, which is extensively detailed in the attached Declaration of Michael Ronickher, can be summarized as follows.

#### A. Pre-Filing Investigation, Research and Complaint

C|C fully investigated DaVita and others' misconduct and then drafted a detailed Complaint and Disclosure Statement over a 22-month period. *Id.* ¶¶ 21- 31. The illegal conduct alleged by the Complaint started in 2005, implicated multiple statutory bases of fraud, and involved multiple entities. *Id.* ¶¶ 23 - 27. Over this period Counsel delved into the applicable regulations and histories, agency guidance on their interpretation, caselaw, and documents which it received from Relator to evaluate the strength of its claims and the viability of any defenses. *Id.* ¶¶ 21 - 22. Its Complaint evolved accordingly.

#### B. Fact Discovery, Further Counsel Investigation, and Collaboration with the Government

Over a six-year period, Counsel worked closely with the DOJ after the filing of the Complaint, and much of the work Counsel performed was at the direct request of the DOJ or to provide the DOJ a factual understanding of the claims. Ronickher Decl. ¶¶ 32 - 85.

The nature of the claims required a close and fine-combed examination and analysis of the numerous contracts governing each of the arrangements at issue, detailed business records, and monthly financials. *Id.* ¶¶ 24 – 27, 42, 57,74.

There were no other law firms assisting Counsel in this effort. In its assistance to DOJ, Counsel prosecuted this matter entirely with its own staff and hand-selected, experienced contract attorneys. *Id.* ¶ 39. Nearly all of the professionals on the case had prior experience in whistleblower actions ensuring that the hours spent were spent efficiently. *Id.* ¶¶ 93, 146 - 177.

## IV.   FINAL SETTLEMENT

The government resolved the case in May 2024 with a final Settlement Agreement wherein DaVita agreed to pay $34,487,390. *Id.* ¶ 86. The Settlement was lauded by the Colorado US Attorney's office and captured the attention of the press and industry publications, including the Denver Post, Colorado Public Radio, the National Law Review, and Healthcare Finance.[2] The amount recovered by the government is substantial, and the impact of this matter goes beyond the public recoupment of these millions of dollars. As noted by the National Law Review it serves as a "crucial reminder" to others, fostering future compliance with the FCA.[3]

## V.   RELATOR'S ATTORNEYS' FEES, COSTS, AND EXPENSES

Due to the wide-ranging nature of the fraud and multiple kickback and corruption schemes alleged in this matter, this was an arduous case. The case settled after Counsel spent: (i) 30,523.5 hours in attorney and legal support time for a total lodestar of $14,537,240.00, based on Counsel's 2024 hourly rates; and (ii) $523,534.78 in hard costs and expenses.[4]

---

[2] Ronickher Decl. ¶ 86; https://www.denverpost.com/2024/07/19/davita-kickback-settlement-department-justice/; https://www.cpr.org/2024/07/18/dialysis-company-davita-settles-lawsuit-anti-kickback-laws/; https://natlawreview.com/article/dialysis-and-deceptiveness-whistleblower-earns-637-million-reporting-unlawful; https://www.fiercehealthcare.com/providers/doj-davita-pay-34-million-settle-kickback-allegations; https://www.healthcarefinancenews.com/news/davita-paying-34-million-over-kickback-allegations

[3] *Id.*

[4] Despite Counsel's lodestar, it is only seeking $14,112,953.03 in attorneys' fees in this petition. In 2018, DaVita settled the Medicare Part C portions of this case. Counsel and DaVita agreed to a partial settlement of Counsel's fees attributable to those claims which were inseparable from

4

### A.      Attorneys' Fees

Individual Counsel pursuing this case were highly experienced, ranging from a former Assistant U.S. Attorney for the Northern District of California to skilled staff and contract attorneys.  *Id.* ¶¶ 146 - 177.  By incorporating such a wide range of seniority into the litigation team, Counsel was able to hold down the costs considerably, often assigning tasks to staff which would be performed elsewhere by more senior, and much more expensive, attorneys.  *Id.* ¶ 39.

Counsel efficiently staffed this with most work — 93% — done by associates, counsel, staff attorneys, contract attorneys, and other staff.  *Id.* ¶ 109.  Only 7% was done by partners.  *Id.*

### B. Costs and Expenses

Counsel incurred $523,534.78 in costs and expenses.  The majority of those costs were for the retention of a national expert in auditing health care systems.  *Id.* ¶ 117.  The second largest expense was for filter counsel to screen documents in Relator's possession prior to their examination by Counsel.  *Id.* ¶¶ 127, 134.  The remainder were for standard, modern litigation costs such as digital forensic analyses to extract electronic files, computerized legal research, document and data hosting, and travel and logistical incidentals.  *Id.* ¶ 116, Table 7.

*     *     *

The detailed records supporting these attorneys' fees, costs, and expenses are attached as Ronickher Decl., Exs. 1-3.  Summaries of Counsel's staffs' rates, experience, lodestars, and professional experiences can be found in the Ronickher Declaration.  Ronickher Decl. ¶¶ 2 - 6, 107, 145 - 177, and Tables 2 and 3,

## ARGUMENT

### I.      THE RELEVANT STANDARD

---

some of the remaining claims.  Counsel and DaVita agreed that if Counsel were to prevail on other covered claims, it would only seek payment on the remaining portion.  Consequently, Counsel has reduced its petitioned fees here by $424,292.97.  Ronickher Decl. ¶¶ 90 - 91.

5

The FCA encourages whistleblowers to step forward and assist the government in combatting fraud.  To do so, it requires defendants to pay successful whistleblowers their reasonable attorneys' fees, costs, and expenses.  31 U.S.C. § 3730(d).  This fee-shifting provision is especially important because, as here, it allows whistleblowers, typically individuals with limited resources, to retain competent counsel to pursue hard-fought, complex litigation against well-represented companies.[5]

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" – the lodestar amount. *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The party seeking the fees has the initial burden of establishing the reasonableness of the requested fees and then the burden shifts to the opposing party to establish why the fees are not supported and what lesser amount is warranted.  *See Hensley*, 461 U.S. at 437 ("fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates").

There is a strong presumption in this Circuit that the lodestar amount represents a reasonable fee for purposes of fee-shifting statutes. *Homeward Bound, Inc. v. Hissom Mem'l Ctr.,* 963 F.2d 1352, 1355 (10th Cir.1992).  The court may adjust the lodestar amount based on the factors articulated in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 718-19 (5th Cir.1974), to the extent those factors are relevant.  *See Gudenkauf v. Stauffer Commc'ns, Inc*., 158 F.3d 1074, 1083 (10th Cir.1998); *Faulkner v. Ensign U. S. Drilling, Inc.,* No. 16-cv-03137-

---

[5] Sen. Rep. 99-345 at 29 (1986) *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5294 (highlighting importance of fee-shifting provisions because "[u]navailability of attorneys' fees inhibits and precludes many private individuals, as well as their attorneys, from bringing civil fraud suits") (internal quotation marks and citation omitted); *see also Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 544 (10th Cir. 2000) (noting same).

PAB-KLM, 2020 WL 550592, at *3-7 (D. Colo. Feb. 4, 2020) (Brimmer, J.) (applying *Johnson* factors in fee-shifting case but noting that "a court need specifically address only relevant *Johnson* factors") (citation omitted).  For the reasons set forth below and in the accompanying declaration, the factors relevant in this case strongly support the award of Relator's requested attorneys' fees, costs, and expenses.

## II.   RELATOR IS ENTITLED TO HIS REQUESTED ATTORNEYS' FEES

Relator is seeking payment for a total attorneys' fee lodestar of $14,537,246.  This amount is reasonable based on Counsel's hourly rates and the hours Counsel worked to secure this result.  These fees are further supported by the relevant *Johnson* factors, especially the time and labor required, the quality of the lawyering, the undesirability of the case, and fee awards made in comparable cases.

### A.   Relator's Requested Attorneys' Fees Are Reasonable

#### 1.   Counsel's Hourly Rates Are Reasonable

Reasonable hourly rates are generally defined as "the prevailing market rate in the community in question for an attorney of similar experience."  *Brilliant Optical Solus.*  2015 WL 1476691, at *3.  Imposing current rates compensates for the delayed payment for work performed over the course a very lengthy litigation.  *See Ramos*, 713 F.2d at 555 ("The hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed.").  Although the default rule is to apply the rates of local attorneys, in some cases, such as here, other rates are appropriate.

*First*, the relevant community for specialized FCA work is national.  FCA litigation is a national, not local, practice.  *See United States ex rel. Monticrieff v. Peripheral Vascular Assocs.*, SA-17-CV-00317-XR, 2023 WL 10409922 at *4 (W.D. Tex. Aug. 1, 2023).  There the

7

court found that the FCA is a "specialized area of the law" and that "national awards may properly be considered." *Id.* Other courts have stated that "[FCA] litigation is a very specialized area of practice" which is a "nationwide practice" and that a national market could be considered as the relevant community. *United States ex rel. Liotine v. CDW–Gov't, Inc.*, No.: 3:05-cv-00033-DRH-PMF, 2013 WL 11267176 at *5., (S.D. Ill. May 17, 2013). The District of Rhode Island approved the use of baseline rates awarded in other FCA actions rather than rates local to the district. *See United States ex rel. Bisbanov. Claris Vision, LLC,* C.A. No. 18-00176-MSM, 2024 WL 2843063 at *2. (D.R.I. June 5, 2024). Moreover, as this Court itself has recognized in a past class action, where, as here, a case requires significant resources and skills, and entails risks, the universe of attorneys willing to litigate those cases are few. *Lucas v. Kmart Corp.*, No. 99–cv–01923–JLK–CBS, 2006 WL 2729260, at *4 (D. Colo. July 27, 2006). In those instances, "the relevant community for purposes of determining a reasonable billing rate . . . consists of attorneys who litigate nationwide." *Id.*

*Second*, courts have held that when considering the reasonableness of the attorney rates, it is instructive to consider the *defendant's* selection of opposing counsel. *See United States ex rel. Fallon v. Accudyne Corp.,* 97 F.3d 937, 941 (7th Cir. 1996). As Judge Easterbrook observed in upholding a district court's award of a fee petition in an FCA case:

> This was a big-stakes case with potentially difficult legal and factual issues. [Defendant] hired a large and expensive law firm from Chicago; it can't grouse that the relators also engaged out-of-town commercial litigators whose hourly rates are normal for commercial cases. People spending their own money do this; the practice passes the market test that governs awards of statutory fees.

*Id.*; *see also, United States ex rel. Rai v. KS2 TX, P.C.,* No. 3:17-cv-834(JBA), 2019 WL 1397290, at *5 (D. Conn. Mar. 27, 2019) ("[N]o party, whether relator or defendant, was represented solely by counsel from within this District . . . providing further indication that a

8

reasonable, paying client would be likely to hire national counsel to investigate and litigate this case.").

*Third*, Counsel came to the table having previously won a historic settlement for the public against the very same defendant, DaVita. Ronickher Decl. ¶ 15. At the time, it was the largest settlement in U.S. history for an action exclusively dealing with healthcare kickbacks, the same type of complex claims at issue here. *Id.* In the FCA action of *United States ex rel. Rai.*, the court was satisfied that, "a reasonable client would likely understand the importance of securing highly experienced counsel to investigate and litigate this case, whether or not such counsel could be found within this District or willing to work at the lower hourly rates standard to this District." *Rai,* 2019 WL 1397290 at 5.

All these factors apply here. DaVita reached out of Denver to pluck well-heeled attorneys out of Chicago. Doing so, as concluded by Judge Easterbrook, it set the market rate for this litigation at the rates of its counsel, Sidley Austin and Hogan Lovells. Relator agreed with DaVita and also retained experienced counsel uniquely qualified to litigate his claims. Counsel's own rates are modest, substantially below the market rates set by DaVita's counsel. It is accordingly reasonable for Counsel to receive its standard rates. Indeed, four years ago Counsel requested and received rates similar, and in some cases *identical*, to the rates requested here. *United States ex rel. Maxwell v. Anham USA, Inc.*, Civil Action No. 1:14-cv-156, 2020 WL 4460364, (E.D. Va. Aug. 8, 2020) at *2-3. This includes two of the very same *attorneys* whose fees are being requested here. *Id.*

Counsel's blended rates are also reasonable – $476.26 for all timekeepers on the case. Ronickher Decl. ¶ 103. These rates fall in line with or well below the rates charted by other firms in similarly (or less) complex matters for attorneys of similar (or less) skill and

9

experience.[6]  Indeed, the blended rate in this case is $262 lower than Counsel itself received in a 2020 matter separate than the one discussed above.  Ronickher Decl. ¶¶ 102 - 105.

### 2. The Hours Counsel Worked Are Reasonable

The total hours Counsel worked on this case was reasonable.  From January 2016 through the fall of 2023, Counsel prosecuted this case with dedication and diligence.  *Id*. ¶¶ 42 - 43, 47 - 48, 55 - 58, 62, 65, 68 - 74, 101.  It painstakingly undertook multiple lines of inquiry, encompassing DaVita's dealings with a variety of other parties and touching upon disparate sections of substantive law.  *Id*. ¶¶ 21 - 29, 44 - 84.  It did so while opposing a multi-billion-dollar corporation, defended by preeminent law firms who also had depth of experience in *qui tam* actions, nationally recognized as being among the best in the field.  *Id*. ¶¶ 8, 19.

The distribution of the hours spent supports the focus and reasonability of the endeavor.  The preliminary theories, and different bases, for an action against DaVita were explored in the period leading up to the filing of the Complaint and the Disclosure Statement.  *Id*. ¶¶ 21 - 23, 28, 93.  That period saw a lighter load of hours, staffed by attorneys with decades of experience in the area.  *Id*. ¶¶ 93, 100, 110, Table 6.  The post-Complaint period, on the other hand, was focused predominately on factual investigation.  *Id*.  It saw a necessarily heavier load of hours but were carried by junior attorneys at the firm.  *Id*.

Counsel's billing brings this into a sharp focus.  The chart below displays how Counsel shifted the seniority and composition of its staff as the needs of the matter shifted themselves.

---

[6] *See, e.g., United States ex rel. Bahnsen v. Boston Sci. Neuromodulation Corp.*, No. 11-1210 , 2021 WL 118927, at *3 (D.N.J. Jan 1, 2021) (**$618** overall blended hourly rate); *Her v. Saul*, No. 1:18-cv-01218-SKO 2020, WL 5702133, at *3 (E.D. Cal. Sept. 24, 2020) (**$797** blended rate); *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *19-20 (N.D. Cal. 2020) (**$634** blended rate).



The factual development was considerable. The document universe was comprised of millions of pages responsive to the government's requests, additional documents which Counsel obtained from Relator, and publicly available documents such as DaVita's filings with the SEC which Counsel utilized in its analyses. *Id.* ¶¶ 16, 22. Counsel reviewed and catalogued the documents to assist the DOJ in a number of avenues. Ronickher Decl. ¶¶ 32 - 84.

### B. The Relevant *Johnson* Factors Further Underscore the Reasonableness of Relator's Attorneys' Fees

The *Johnson* factors relevant to this case powerfully support the reasonableness of Relator's fees.

#### 1. Time and Labor Required

Counsel performed an exhaustive amount of work, in excess of 30,000 hours, on this matter over the course of eight years. *Id.* ¶ 109, Table 5. Much of the work performed was at the request of the DOJ or to support its evaluation and prosecution of the matter. *Id.* ¶ 32.

11

### 2. *Novelty and Difficulty of the Case*

This case presented a set of unique challenges. Multiple novel and complicated kickback arrangements by a major multinational dialysis and healthcare provider were alleged. *Id.* ¶¶ 8 – 12, 23 - 27. FCA health care cases are inherently challenging because of the myriad rules and regulations that govern Medicare/Medicaid participation and payment. *Id.* ¶ 21. There was a wide breadth of conduct and documentation required to conduct a thorough investigation. *Id.* ¶¶ 23 - 27, 32, 55-56, 62, 71 - 74.

### 3. *Level of Skill Required/Quality of Counsel*

FCA cases are generally considered a "specialized area of the law." *Peripheral Vascular Assoc.* 2023 WL 10409922 at *4. DaVita retained some of the largest and most highly regarded defense counsel for *qui tam* actions. *Id.* ¶ 19. C|C, which initiated the action, was one of the limited number of firms with the history and capability necessary to successfully take on DaVita and its law firms in this case. *Id.* ¶¶ 17 – 18.

### 4. *Preclusion of Other Employment*

The length and intensity of this matter precluded a significant portion of the C|C whistleblower practice group from pursuing other matters. This was no small sacrifice for a practice as active and in demand as C|C's whistleblower practice, which receives far more requests for counsel that it can ever accept. *Id.* ¶ 140. Eight of Counsel's attorneys dedicated more than 10% of their time to the case, and for four of them over 25%. *Id.* ¶ 108, Table 4.

### 5. *Contingent Nature of Fee*

The case required a significant commitment of time and money. *Id.* ¶ 18 - 19. The lost opportunity cost this case presented was compounded by the contingent nature of the representation, as there was no guarantee of Counsel ever recovering on either. *Id.* Courts have consistently found that the type of fee arrangement where counsel runs a significant risk of

nonpayment ways in favor of the reasonableness of a requested fee award.  *See Faulkner,* 2020 WL 550592 at *5.

      6.      *Quality of Results Obtained*

The matter resolved with a substantial, $34 million settlement for the government, recouping millions of dollars for the public.  Ronickher Decl. ¶ 86.  The settlement was lauded by the DOJ and pronounced by the national press as a warning and caution against committing future fraud.  *See supra* p. 4.

      7.      *Awards in Similar Cases*

The $14,537,246.00 lodestar here is reasonable when compared to Counsel's fee awards in similarly complex and lengthy litigations.  Some of Counsel's recent cases resulted in: (a)  $48 million flowing to the state of Illinois and $22 million flowing to Counsel and its co-counsel for its fees and expenses; (b) $109 million in restitution to the public for the mismanagement of governmental fund in Iraq, with Relator's counsel receiving $34.95 million in attorney's fees; and (c) $125 million to the state of California under the California False Claims Act for overcharges to California public entities, with C|C and its co-counsel receiving $35 million in reasonable attorneys' fees.[7]  It is Counsel's practice to litigate lengthy and complicated whistleblower matters, assisting in the recouping of substantial sums for the public, and, when successful, Counsel is compensated accordingly.[8]

---

[7] https://www.prnewswire.com/news-releases/whistleblower-secures-70mm-settlement-for-alleged-municipal-bond-fraud-and-price-fixing-302095982.html; https://www.kbr.com/en/insights-news/press-release/kbr-successfully-settles-legacy-legal-matter; https://www.latimes.com/business/story/2020-09-25/verizon-at-t-to-pay-116-million-to-settle-california-whistleblower-lawsuit

[8] It may be noted that were this a complex class action, similar to here in requisite sophistication, duration, and contingency of payment, Relator's fee would fall within this Circuit's guidelines of proportionality.  If Counsel's fees and expense and the recovery were aggregated to a common fund, it would total $49,123,877.81.  Counsel's share would be 29.8%, within the customary one-third for contingency fees awarded within this district.  *Faulkner* 2020 WL 550592 at *4.

*8.    The Undesirability of the Case*

Given the length of time, hours expended, complexity of the case, expertise required, hard costs committed, resources available to the defendants, sophistication of opposing counsel, with no guarantee of ever getting compensated for any of it, this was not a desirable case for many attorneys to accept.

**C.    The Attorneys' Fees Incurred By DaVita Support the Reasonableness of Relator's Attorneys' Fees**

A useful metric to assess the reasonableness of Relator's attorneys' fees in this case should be the attorneys' fees DaVita incurred.  The Eleventh Circuit has recognized that courts may consider the billing of the opposing counsel in determining the reasonableness of a fee.  *See, e.g., In re Home Depot Inc.*, 931 F.3d 1065, 1089 n.22 (11th Cir. 2019) ("Where a party challenges the reasonableness of fees sought by an adversary, a useful source of relevant information in the form of a reference point may be the fees incurred by the objecting party.) *(quoting* David F. Herr, Ann. Manual for Complex Litigation § 14:13 (4th ed. 2018)).  Here, DaVita hired law firms sophisticated in the area of *qui tam* actions. Ronickher Decl. ¶ 19.  Counsel's rates are much lower.  *Id.*, Table 1.

**III.   RELATOR IS ENTITLED TO HIS REQUESTED COSTS AND EXPESNES**

As supported by the accompanying billing records, Counsel incurred $523,534.78 in costs and expenses in this case.  Ronickher Decl., Ex. 3.  For many of the same reasons justifying the amount of Relator's attorneys' fees—most importantly, the difficulty of the case and the quality of the result—these costs and expenses are reasonable.  The bulk of this amount comes from the retention of PYA whose expertise was required in performing the valuations of the considerations which flowed from DaVita to the other involved parties.  Ronickher Decl. ¶¶ 116 - 136.  The rest of the costs and expenses Relator incurred were largely for travel, computerized

14

research, filter counsel, and data hosting, all reasonable and customary costs for a litigation of this size and scope.

## IV.     RELATOR IS ENTITLED TO HIS FEES IN MAKING THIS MOTION

Relator is also entitled to the fees he has incurred in having to make this motion. These kinds of "fees-on-fees" awards are routinely made to reimburse prevailing parties in mandatory fee-shifting cases who are forced to litigate over the fees to which they are entitled by statute. *See Shaw*, 213 F.3d at 545 (concluding that the FCA attorney fee provisions "allow the award of attorney's fees for time spent in post-judgment collection activities").Relator will provide with his reply brief the final amount of fees he has incurred and for which he seeks reimbursement in making this motion.

## CONCLUSION

For the reasons set forth herein and in the accompanying declaration, Related respectfully requests that the Court order DaVita to pay Relator (i) $14,112,953.03 in attorneys' fees; (ii) $523,534.78 in costs and expenses; and (iii) the fees Relator incurred in making this motion in an amount to be identified in Relator's reply brief.

Dated: October 3, 2024                                   Respectfully Submitted,

*/s/ Matthew A. Moore*
Matthew A. Moore
CONSTANTINCANNON LLP
6 E. 43rd St. Fl. 26
New York, NY  100017
Tel: (212) 350-2700
Email: mmoore@constantinecannon.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd of October, 2024, I electronically filed the foregoing **RELATOR'S MOTION AND MEMORANDUM OF LAW FOR ATTORNEYS' FEES, COSTS, AND EXPENSES** using the CM/ECF system, which served a notice of electronic filing on all counsel of record and served by email to the following counsel for defendants:

Jaime L.M. Jones
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: (312)853-0751
Email: jaime.jones@sidley.com

Michael Theis
HOGAN LOVELLS
1601 Wewatta Street, #900
Denver, CO 80202
Phone: (303) 899-7300
Email: michael.theis@hoganlovells.com

*Counsel for Defendants*

                                                */s/Matthew A. Moore*
                                                Matthew A. Moore