IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DENNIS KOGOD,<br>     *Plaintiff,*<br>v.<br>DAVITA, INC., DAVITA RX, LLC, DVA LABORATORY SERVICES, INC., d/b/a DAVITA LABS, TOTAL RENAL LABORATORIES, INC., RMS LIFELINE, INC., d/b/a LIFELINE VASCULAR ACCESS, REGAL MEDICAL GROUP, INC., and HERITAGE PROVIDER NETWORK,<br>     *Defendants.* | Civil Action No. 17-cv-02611-PAB |

## **OPPOSITION TO RELATOR'S PETITION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Relator's Petition for attorneys' fees, costs, and expenses, Dkt. 88, makes the extraordinary demand for over $14.6 million even though Relator's claims were never litigated and the Department of Justice ("DOJ" or "the Government") entered into a settlement with DaVita Inc. ("DaVita") resolving this case for only $34.4 million. Relator's Petition ignores the fact that the settlement involved only a small subset of the allegations made in Relator's Complaint and seeks reimbursement for basically every minute his attorneys recorded during DOJ's investigation (plussed up to 2024 rates), including substantial sums for time spent on claims on which Relator obtained negligible or no success, and for work that had no connection to the Complaint.

Compounding these problems, the fee demand reflects a lack of any reasonable billing judgment. It includes, for example, fees for reviewing filings for Relator's divorce case, mulling over claims never pled or possible co-defendants who were never added, work on other cases, and for communicating with Relator's employment attorney, even though no retaliation claim was asserted. And it encompasses an astounding $8 million claimed for three attorneys who were

1

churning time, day-in and day-out for several years, reviewing documents, at rates that far exceed market rates for such work. Finally, the time detail reflects a host of improper billing practices: vague entries, block billing, inflationary quarter-hour increments, billing full rates for travel time, and billing for administrative tasks. For these issues, DaVita asks the Court to reduce the fee demand in line with the standards endorsed by the Tenth Circuit Court of Appeals and this District.

## BACKGROUND

On October 21, 2017, former DaVita employee Dennis Kogod ("Relator"), filed this Federal False Claims Act, 31 U.S.C. § 3729-3733 (the "FCA"), *qui tam* action under seal. The Complaint (Dkt. 1, "Compl.") asserts four causes of action arising from nine alleged courses of conduct. These are described in greater detail in Jaime L.M. Jones' Declaration ("Jones Dec.") ¶¶ 5-14, and are as follows: (1) Compl. ¶¶ 165-173 ("FMC" issue); (2) *id*. ¶¶ 143-155 ("Lifeline" issue); (3) *id*. ¶¶ 156-164 ("Hopkins" issue); (4) *id*. ¶¶ 237-248 ("Labs" issue); (5) *id*. ¶¶ 176-180 ("Co-pay waiver" issue); (6) *id*. ¶¶ 181-236 ("DMG" issue); (7) *id*. ¶¶ 174-175 ("Venofer" issue); (8) *id*. ¶¶ 249-256 ("Auto-Refill" issue); *id*. ¶¶ 257-266 ("Solari Hospice" issue).

One month later, in November 2017, DOJ obtained a partial unsealing of the Complaint and shared it with DaVita, beginning a discussion that initially focused on the FMC allegations. Jones Dec. ¶¶ 17-18. DaVita voluntarily produced documents and information, and later responded to a Civil Investigative Demand ("CID") related to the FMC issue. *Id*. ¶¶ 19-21. DOJ later issued CIDs related to the Lifeline and Hopkins issues. *Id*. ¶ 22. DaVita understands that prior to September 2022, DOJ took testimony from a total of five witnesses: three witnesses who had information only relevant to the FMC issue, and two witnesses who had information relevant only to the Lifeline issue. *Id*. ¶¶ 25-28.

At the conclusion of its investigation of the FMC issue, in September 2022, DOJ made a

presentation of its findings to DaVita; DaVita responded in December 2022. Jones Dec. ¶¶ 39-41. Thereafter, and without any further productions or witness interviews, DOJ and DaVita began discussions about a possible resolution under which DaVita would pay for a release from the United States of claims arising from the FMC issue only. *Id*. ¶ 39, 42. During settlement discussions, DaVita requested to include claims related to the Lifeline and Hopkins issues in the settlement release and to attribute small-dollar amounts to each—issues which DOJ had indicated it did not intend to pursue. *Id*. ¶ 43. In December 2023, DaVita, the Government, and Relator reached agreement on the essential terms of the settlement, which was executed on May 6, 2024. *Id*. ¶ 41, Ex. C. Of the total $34.4 million settlement amount, $33.23 million—or **96% of the settlement**—was attributed to the FMC issue, $1.050 million to the Lifeline issue, and $200,000 to the Hopkins issue. *Id*. ¶ 43-44.

The *qui tam* provisions of the FCA provide that in an intervened action, Relator shall receive "at least 15 percent but not more than 25 percent of the [] settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). The Government awarded Relator 18.4% of the settlement amount ($6.3 million), *see* Jones Dec. Ex. C, more than the minimum, but far from the maximum.

The case settled before the Complaint was unsealed and without any litigation. Jones Dec. ¶ 45. Following amicable but unsuccessful efforts to resolve Relator's fee demand, Relator filed his Petition seeking $14.6 million for 30,522 hours, costs, plus "fees-on-fees." Dkt. 88 at 15.

## LEGAL STANDARD

*Qui tam* relators are entitled to "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). "The most useful starting point . . . is [finding] the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,"—*i.e.* the "lodestar." *Hensley*

3

*v. Eckerhart*, 461 U.S. 424, 433 (1983). "[W]here Plaintiff 'achieved only partial or limited success,' the calculation for reasonable attorney's fees requires more than just determining 'the product of hours reasonably expended on the litigation *as a whole* times a reasonable hourly rate'[;] such '*may be* an excessive amount.'" *Browder v. City of Moab*, 427 F.3d 717, 722 (10th Cir. 2005)

Petitioner's burden "is to prove and establish the reasonableness of each dollar, each hour, above zero." *White v. Cavalry Portfolio Servs., LLC*, 2012 WL 899280, at *3 (D. Colo. Mar. 16, 2012) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986)). An "important part" of the analysis "is assessing the attorney's 'billing judgment,'" because all "[p]racticing attorneys know that not all time expended on a case is actually billed to the client." *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (quoting *Hensley*, 461 U.S. at 434). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. [] Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* []." *Hensley,* 461 U.S. at 434; *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Billing judgment [is] winnowing the hours actually expended down to the hours reasonably expended.").

**ARGUMENT**

**I.      Relator's Counsel's Fees Should Be Reduced in Proportion to the Lack of Success, Excluding Time Spent on Unsuccessful Claims or Irrelevant Issues**

When courts analyze the reasonableness of attorneys' fees, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. "[W]here the plaintiff achieved only limited success, the district court should award only that amount that is reasonable *in relation to the results obtained*." *Browder,* 427 F.3d at 722 (quoting *Hensley,* 461 U.S. at 440). And "[w]here a plaintiff fails to prevail on a claim that is distinct in all respects from his successful claim, 'the hours spent on the unsuccessful claim should be excluded.'" *U.S. ex rel. Thompson v. Walgreen*

4

*Co.*, 621 F. Supp. 2d 710, 717 (D. Minn. 2009) (quoting *Hensley*, 461 U.S. at 716).

Relator's requested lodestar of 30,522 hours encompasses an extraordinary amount of time expended on: (i) issues of only nominal success, (ii) unsuccessful issues, and (iii) work unrelated to the Complaint, including *on other matters*. Relator's attorneys' fees should be reduced in proportion to the lack of success, and entirely for time spent on unsuccessful or irrelevant issues.

*First*, Relator achieved success *only* on his claim arising from the FMC issue and much more limited success on claims arising from the Lifeline and Hopkins issues – but no success on the other six issues.[1] *See supra* at 2-3; Jones Dec. ¶¶ 43-44; 5-14. Indeed, 96.4% of the $34.4 million of the settlement pertains to just the FMC issue. *See* Jones Dec. ¶ 40. The Hopkins issue accounted for just 0.6% of the settlement and the Lifeline issue accounted for just 3%. *Id.* And the $34.4 million settlement represents a tiny fraction of the recovery Relator sought; alleged damages were "hundreds of millions of dollars," Compl. ¶ 8, which Relator argued should be trebled, and sought the "maximum allowable civil penalty" on a per-claim basis. *Id.* Prayer ¶ 2.

Relator cannot recover for all time on the case just because of the FMC issue: "[I]t would be improper to allow . . . recover[y] for *all* of the *qui tam* work under the guise of the" one successful claim. *United States v. Parker-Migliorini Int'l LLC*, 2023 WL 1474858, at *3-5 (D. Utah Feb. 2, 2023) (emphasis added) (reducing fee request by 82% in proportion to degree of success at trial). Indeed, courts consistently reduce requested fees in proportion to the degree of success. For example, in *Ramos v. Banner Health*, Plaintiffs recovered just 15% of the total amount of damages requested on the only two prevailing issues; in proportion with the lack of success, the court reduced the requested fees to 20% of the total fee request. 2021 WL 2823079,

---

[1] The DMG issue overlapped with issues DOJ was already in discussions with DaVita to settle, and Relator's counsel already recovered their fees on that issue. The Auto-Refill issue was voluntarily disclosed by DaVita Rx and settled with the Government independent of Relator's Complaint. Jones. Dec. ¶¶ 15-16.

at *6 (D. Colo. July 7, 2021); *see also Reyes v. Snowcap Creamery, Inc.*, 2014 WL 2459740, at *2, *6 (D. Colo. June 2, 2014) (reducing lodestar by 75% as plaintiffs "only nominally won" the lawsuit and recovered less than 2% of claimed damages). DaVita's expert, Jerome Studer, analyzed counsel's time entries to determine the hours spent on each issue and task. Declaration of Jerome Studer ("Studer Dec.") 3-5. Relator seeks to recover for 6,151 hours ($3.1 million) identifiably[2] spent on the Lifeline and Hopkins issues—**more than double the settlement amount** attributed to them. *Id.* at 13, Ex. B. The Lifeline and Hopkins issues accounted for just ~3.6% of the settlement (and far less than 1% of the damages and penalties sought by Relator). And because DOJ had decided to abandon these issues, and it was DaVita that requested they be included in the settlement, Jones Dec. ¶ 43, Relator's efforts did not contribute in any way to the outcome. Thus, Relator's counsel should only receive, at most, 3.6% (221 hours) of the time identifiably spent on Hopkins and Lifeline issues, reducing the lodestar by 5930 hours.

*Second*, claims based on the six other distinct issues were not included in the settlement and the entire case was dismissed with prejudice. Dkt. 77, 82; Jones Dec. ¶¶ 43-44, Ex. C. Thus, Relator did not succeed on the claims arising from those issues and is not entitled to fees under §3730(d)(1). *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1128–29 (D. Colo. 2008) (reducing lodestar by 70% where plaintiff prevailed on only one out of twelve claims). And as courts in this Circuit have recognized, where a Plaintiff "succeeded on only some of his claims for relief," a court may exclude fees related to claims on which plaintiff lost. *Ramos*, 2021 WL 2823079 at *6 (quoting *Hensley*, 461 U.S. at 434). For example, in *Parker-Migliorini,* Relator brought both a claim under 31 U.S.C. § 3729 and a retaliation claim under § 3730(h)(2). 2023 WL 1474858 at

---

[2] These amounts only encompass time entries that included sufficient detail to assess what issue the work pertained to. As discussed further below, *infra* § III.C, the pervasive vagueness of the time entries impeded DaVita's and it's experts ability to identify the issues the time was spent on.

6

*3. Relator did not prevail on any of his § 3729 counts but did prevail on his retaliation claim. *Id*. The court excluded all time spent on the unsuccessful § 3729 counts, thus reducing the total fee award by 82%. *Id*. at *3-5. Yet, here, Counsel is seeking a combined $80,988 (129 hours), Studer Dec. 14, Ex. C, for time related to the six unsuccessful claims, which should all be subtracted.

*Third*, Relator is seeking fees for time that has *nothing* to do with the Complaint. This is not a new tactic by Relator's counsel at Constantine Cannon. In *Maxwell*, the court rejected Constantine Cannon's request to recover fees related to separate legal work involving the same client, holding that "Relators are not entitled to recover for work performed supporting [a] criminal investigation" and reduced the fees by 20% as a result. 2020 WL 4460364, at *5. Here, the entries similarly include time spent on: unrelated criminal proceedings, researching antitrust or RICO claims (which were never pled), considering potential shareholder litigation (which is not part of this case and was never brought) and counterclaims (which DaVita never asserted), and Relator's divorce case, as well as ~$30,000 in fees to communicate with his employment attorney, even though no retaliation claim was pled. Studer Dec. 16-19, Ex. D. Relator's Petition asks this Court to award $126,253 (152 hours) for time spent on clearly irrelevant matters, which this Court should deny. *U.S. ex rel. Swanton v. Zou*, 2024 WL 1858532, at *7 (D. Colo. April 29, 2024) (denying all fees related to "non-asserted, employment-related causes of action," "alleged bribery of Chinese officials[,] and possible FCPA claims" as not recoverable under 31 U.S.C § 3730(d)).

## II.   Counsel Is Not Entitled to Recover for Excessive Time

Courts in this Circuit reduce fee requests for excessive time. *Shabazz v. Pinnacle Credit Servs. LLC*, 2016 WL 6892948, at *6 (D. Colo. Nov. 23, 2016) ("… Plaintiff's fee request is excessive, and warrants a 20% reduction"). Relator attempts to avoid this outcome by arguing that

7

because he was assisting DOJ in its investigation[3], *every one* of the 30,119 hours billed *after* the Complaint was filed were not only reasonable, but necessary. Courts have rejected exactly this argument before—including as made by this same law firm. In *Maxwell*, Constantine Cannon sought $889,199.91 in fees billed while the Government was investigating. 2020 WL 4460364 at *4. There, as here, they argued this time was recoverable because they were "preparing for meetings with the Government, conducting 'targeted document review,' providing the Department of Justice with legal analysis of issues, and answering the Government's questions." *Id*. The court wholly rejected that argument, ruling that "Relators are not entitled to recover fees generated during the 'government investigation' phase of this case." *Id*. That is because, "[o]nce the case was filed, the Government's obligation to investigate the allegations was mandated by 31 U.S.C. § 3730(b), and although Relators [sic] legal analysis may have been beneficial to the Government, it was hardly 'integral,' much less necessary." *Id*.; *see also U.S. ex rel. Zediker v. OrthoGeorgia*, 407 F. Supp. 3d 1330, 1344-46 (M.D. Ga. 2019) (scrutinizing hours incurred during the government investigation phase and applying an overall 60% reduction "for excessive and poorly documented hours").

And even if *some* time spent assisting the Government during the investigation phase is recoverable, the Court must consider "whether the attorney's hours were 'necessary' under the circumstances." *See Valdez v. Macdonald*, 66 F.4th 796, 836 (10th Cir. 2023) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)). "'Counsel' . . . must exercise 'billing judgment,' and 'should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Id*. (quoting *Hensley*, 461 U.S. at 434). The entries reflect a failure to exercise billing judgment. As one example of time no client would pay

---

[3] DaVita served discovery requests, but Relator refused to produce documents showing the scope of DOJ's requested work, and did not produce a privilege log. Jones Dec. ¶¶ 32-35, Ex. E.

8

in full for: Eric Havian (a partner) billed 14.75 hours to "Attend client interview by DOJ; **return to Oakland (work on other matters)**." Studer Dec. 18.

More broadly, the fee records show that, while DOJ was diligently pursuing its statutory obligation to investigate, Relator's counsel was billing an enormous amount of time behind the scenes. 72% of the hours recorded (24,948) were incurred while DOJ was investigating and pertain to two specific tasks: document review (19,419), and "witness kits" (4,387). *Id*. at 8-10, Ex. E, Ex. P. The number of hours spent on these tasks was unreasonable and unnecessary.

i. Document Review

Counsel billed a total of 19,387 hours to document review. *Id*., Ex. E. One attorney, Shari Newman, billed over 9,833 hours almost entirely on document review, *id*. at 7, Ex. F, which *averages* to 6.7 hours a day, **every single day, including weekends and holidays, for four years** straight, on just this matter, and apparently without taking any sick days or vacation days.[4] Relator contends that these eye-popping numbers are attributable to a bottom-heavy billing structure necessitated by the volume of documents produced by the Company. But this obscures how document reviews typically work. Paying clients expect that first-level review of voluminous productions is conducted using targeted searches and external contract attorneys. *See In re Beacon Assocs. Litig*., 2013 WL 2450960, at *18 (S.D.N.Y. May 9, 2013) ("There is little excuse . . . for delegating document review (particularly primary review or first pass review) to anyone other than extremely low-cost, low-overhead temporary employees [].")); *see also* Jones Dec. ¶ 29.

Over the course of DOJ's investigation, DaVita produced 360,472 documents. *Id*. ¶ 24. Even if having full-rate attorneys review every single document in a production was a reasonable

---

[4] Counsel attempts to rehabilitate Ms. Newman's entries by claiming that she "was delegated multiple projects of research and analysis." Dkt. 88-1 ¶ 101. Her time entries do not reflect work that Counsel is retroactively attempting to attribute to her; instead, they nearly uniformly state "continued to review documents" in repetitive 9, 10, and 11 hour chunks. Studer Dec. Ex. F.

9

undertaking—and it manifestly is not—based on the 19,387 billable hours attributed to document review, the review rate is ~18.5 documents an hour. That is far below the typical review rate of 50-80 documents per hour. *Id*. ¶ 31, Exs. A, B. Had Relator's counsel deployed the vastly more efficient practice of targeted searches, the review rate would have been even higher. Using an average 60 documents per hour, again even assuming it was reasonable to review *every single* produced document, the total number of hours expended should have been approximately 6,007 hours, not 19,387. This Court should subtract the difference of 13,380 hours from the lodestar.[5]

Further increasing the costs is the fact that Relator seeks to bill contract attorneys at $290/hour and the staff attorney reviewers—one of whom mostly conducted document review— at $480/hr. Studer Dec. 21-23, Ex. F, G. If *just* the three contract attorneys and the staff attorney (who billed 11,001 of the total 19,387 hours spent on document review), *id*., were billed at the typical contract attorney rate of $50, Jones Dec. ¶ 30, that would have amounted to fees of $550,050, *not* $3,379,073. This is a paradigmatic example of excessive billing. This Court should instead apply the typical rate of $50 across all of the 6,007 reasonably expended document review hours. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 527-31 (N.D. Cal. 2020) (applying $42.50 per hour for contract attorneys, the rate "actually paid" by Plaintiffs' counsel); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 980 (N.D. Cal. 2014) (using $47-$59 per hour); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 430 n.2, 438 (S.D.N.Y. 2016) ($39 per hour).

    ii.    "Witness Kit" Preparation

Relator's counsel's witness preparation efforts were equally inefficient. Separate from the 19,387 hours billed to document review, counsel spent 4,387 hours on so-called "witness kits."

---

[5] Incredibly, Relator claims that DOJ requested that Counsel take the extraordinary step of conducting a linear review of DaVita's July 2021 production. But even if DOJ made this request, that production was related to the Lifeline issue, which did not factor in DOJ's pursuit of a settlement, or contribute in any meaningful way to the result. Jones Dec. ¶¶ 22, 42-44.

10

3,174 of those hours could be tied to specific witnesses, but the other 1,212 vaguely described hours do not identify a witness. Studer Dec. 10, Ex. P. DaVita's expert was able to identify 21 potential witnesses for which counsel recorded time (even though only five were actually deposed). *Id*. This works out to an average of 208.9 hours per witness, the equivalent of an attorney spending an entire month, at ~52 hours per week, doing nothing else but re-reviewing documents and assembling a kit for *one witness*. These numbers standing alone are excessive. But, when coupled with the massive amount of time *separately* expended reviewing documents, that work plainly did not result in any efficiencies, essentially double billing for document review.

Finally, only three witness depositions took place that were related to the FMC issue. Jones Dec. ¶¶ 25-26. The other two related solely to the Lifeline issue, and the remaining 16 individuals were never deposed and could not have contributed to the result. *Id*. Thus, at most, counsel should only recover time spent on those three FMC witnesses (705 hours), *id*.; Studer Dec. 20—reduced by 50% to account for inefficiencies—and the lodestar should be reduced by 4,035 hours.

### III. Counsel's Billing Practices Inflate Their Lodestar and Impede Review

Compounding the issues above are billing "practices that make it difficult—if not impossible—for the Court to conduct meaningful review." *U.S. ex rel. Drennen v. Fresenius Med. Care Holdings, Inc*., 2024 WL 2720786, at *4 (D. Mass. May 28, 2024) (improper vague entries, block billing, and billing for travel time and clerical work). Those are: (1) billing in quarter hour increments, (2) vague time entries, (3) block billing, (4) billing for travel time at full rates, and (5) billing for administrative time, for which this Court should impose reductions.

#### A. Billing in 0.25 Increments Results in Inflated Fees

Counsel's billings are inflated across the board because "the minimum billing increment utilized by . . . counsel is .25 hours rather than .10 hours." *Bell v. Turner Recreation Comm'n*, 2010 WL 126189, at *5 (D. Kan. Jan. 8, 2010) (applying a 20% reduction for a combination of

11

block billing and quarter hour increments); *see also Ramos,* 2021 WL 2823079, at *7 (criticizing "attorneys [who] did not bill in tenth-of-an hour increments at all" including months where "every billing entry is billed as a full hour or to the nearest half hour"). *See* Studer Dec. 24-25, Ex. H. Where, as here, "every time entry is block billed and every entry is rounded to a quarter-hour, the court's task [of assessing reasonableness] is an impossible one[,] yet the practice has clearly produced an inflated number of hours." *Turner*, 2010 WL 126189, at *5 (citing *Cambridge Toxicology Grp. Inc., v. Val Exnicios*, 495 F.3d 169, 181–82 (5th Cir. 2007) (affirming reduction of 12.5% for billing in quarter-hour increment); *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 948–49 (9th Cir. 2007) (affirming reduction of 20% for same); *La Barbera v. Pass 1234 Trucking, Inc*., 2007 WL 2908175, at *7 (E.D.N.Y. 2007) (reducing lodestar by 15% for quarter hour billing)). Applying this inflationary increment across thousands of hours warrants a 20% reduction.

  B. <u>Use of Block Billing Should Be Heavily Discounted</u>

Relator's counsel also consistently lumped multiple tasks into a single entry, which "make[s] it impossible to allocate specific increments of time to each claim." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 (10th Cir. 1996). Here, "[t]he fee request is replete with charges for matters that are . . . block-billed." *Garcia v. Midland Credit Mgmt., Inc*., 2015 WL 4911544, at *2 (D. Colo. Aug. 18, 2015); *Valdez*, 66 F.4th at 842-43 (affirming 12.5% reduction for "relatively modest" instances of block billing). Thousands of hours are recorded in entries with multiple tasks that do not disaggregate time, impeding review. *See* Studer Dec. 25-27. This Circuit disapproves of this exact type of billing, affirming 35% to 40% reductions applied specifically to block-billed time. *BP Pipelines (N. Am.) Inc. v. C.D. Brown Constr., Inc.*, 473 F. App'x 818, 834-36 (10th Cir. 2012) (affirming 40% reduction); *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (affirming 35% reduction); s*ee also Drennen*, 2024 WL 2720786 at *4 (applying reduction for entries such as "Prepare for [B]oston hearing; attend [B]oston hearing;

research; travel."). This billing practice warrants a 20% reduction.

  C. <u>Vague and Redacted Entries Should Be Reduced</u>

Vague entries warrant reductions as "[s]uch description[s] fail[] to provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable." *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989); *see also Jane L.,* 61 F.3d at 1510 (affirming "district court's 35% reduction of the hours requested"); *Clawson v. Mountain Coal Co.*, 2007 WL 4225578, at *19-20 (D. Colo. Nov. 28, 2007) (reducing total amount of fees by 15% to eliminate "excessive, unnecessary and vague billings" that remained after other reductions.); *Raab v. City of Ocean City*, 2017 WL 2779753, at *4 (D.N.J. June 26, 2017) (example of vague entry rejected by the court: "review[ing] discovery documents").

Here, vague entries are a recurring theme. Studer Dec. 23, 27-29, Ex. N. As one example, Leah Judge (an associate) billed two hours to "Review and reply to emails; review documents." *Id*. at 28. Michael Ronickher (a partner) billed 3.5 hours to "Revise PPT for cocounsel." *Id*. These vague entries make it impossible to assess what issue the time related to (or even if it was related to this case) or whether it was performed efficiently. When vague entries are coupled with redactions there is nothing for the court to go on. *Id*. at 29-30. This warrants a 20% reduction.

  D. <u>Travel Time Should Not Be Compensated at Full Rates</u>

The records reflect that counsel billed for travel time at full rates, including in entries that do not otherwise reflect any substantive work done during the travel or work on this case. *See* Studer Dec. 30-31. While DaVita disputes that in this current market it is appropriate for any lawyer to charge for travel time, case law confirms that unproductive travel should be billed at no more than "50% of an attorney's regular time." *Drennan*, 2024 WL 2720786 at *5. Here, Counsel is seeking *full* rates for *all* travel time. Studer Dec. Ex. J. Because Counsel's block billing makes it impossible to isolate just the travel time, this Court should take a 5% reduction across the board.

13

E.  Administrative and Clerical Tasks Are Not Recoverable

The billing records also include 467 hours of non-legal administrative and clerical tasks that no client would pay for in the marketplace. *Shabazz*, 2016 WL 6892948, at *5 (reducing time spent arranging meetings and travel); *see also Drennan,* 2024 WL 2720786 at *4 (reducing total fees by 5% for clerical work). For example, one associate billed 1.5 hours to "FedEx complaint to client," while another billed three hours to "Finalize file transfer; confirm return of token; confer with M. Ronickher." Studer Dec. 32-34, Ex. K, Ex. L. This Court should subtract all of this time.

**IV.  Counsel Should Not Recover 2024 Rates**

Relator asks this Court to revalue all of the time spent on this case, dating back to 2016, at 2024 rates. This request should be rejected because it will "create a windfall for plaintiffs' counsel." *Radtke v. Caschetta*, 254 F. Supp. 3d 163, 181 (D.D.C. 2017). Indeed, a court has previously found that this exact firm was "not entitled to an award based exclusively on their [current] rates and that awarding the proposed amount would result in a windfall." *Maxwell*, 2020 WL 4460364 at *6 (reducing fee request by 5% to discount counsel's use of current rates).

When courts award current rates the purpose is "to roughly compensate for delay in payment." *Radtke*, 254 F. Supp. 3d at 181 (quoting *Covington v. D.C.*, 839 F. Supp. 894, 902 (D.D.C. 1993)). Relator "must show that the delay in fee payment has produced some degree of hardship such that an award of current rates does not produce a windfall." *Bennett v. Castro*, 74 F. Supp. 3d 382, 399 n.6 (D.D.C. 2014) (quoting *Covington*, 839 F. Supp. at 902) (applying historical rates and noting no showing of hardship). But Relator does "not explain why it would be appropriate" to award current rates, or what hardship would result from applying historical rates. *See id.* Because Relator's counsel operates on a contingency fee basis, Jones Dec. ¶¶ 46-48, Ex. D, Counsel is expected to receive a significant percentage of Relator's $6.3 million portion of the settlement. "[D]enial of attorneys' fees might be appropriate" when contingency fees plus

14

a requested fee "combine to provide counsel 'an extraordinarily high rate of compensation,'" as would happen here.  Boese & Baruch, *Civil False Claims & Qui Tam Actions* § 3.09(e).  Because the contingency fee compensates Counsel for any delay, this Court should apply historical rates.

## V.     Counsel Should Not Be Awarded Fees on Fees

Relator's Petition also demands "fees-on-fees."  Dkt. 88 at 15.  However, Relator does not provide an amount or number of fees, but instead claims that he will "provide with his reply brief the final amount of fees he has incurred and for which he seeks reimbursement in making this motion." *Id.*  Another court rejected this wait-and-see tactic from this exact firm.  *Maxwell*, 2020 WL 4460364 at *8.  Because "it is Relators' burden to establish that they are entitled to the award at the outset, and having submitted no documentation supporting the amount of fees expended in connection with preparing and filing this motion," *id.*, this Court should not allow Relator to seek fees-on-fees submitted for the first time with its Reply.  *See Miracle Gash v. Client Servs., Inc.*, 2013 WL 1130717, at *4 (D. Colo. Mar. 18, 2013) (requiring an advance estimate of reply fees).

## CONCLUSION

In light of the foregoing, this Court should reduce Relator's lodestar accordingly:

| Basis for Reduction | Requested Reduction |
|---|---|
| De minimis success on Lifeline and Hopkins.  *Supra* 5-6. | 5,930 hours reduction |
| No success on six other claims.  *Supra* 6-7. | 129 hours reduction |
| Irrelevant or unrelated issues.  *Supra* 6-7. | 152 hours reduction |
| Excessive time: document review.  *Supra* 9-10. | 13,380 hours reduction* |
| *Remaining 6,007 hours of document review time should be billed at rates of $50/hour.  *Id.* | |
| Excessive time: "witness kit" preparation.  *Supra* 10-11. | 4,035 hours reduction |
| Billing in .25 increments.  *Supra* 11-12. | 20% reduction |
| Block billing.  *Supra* 12. | 20% reduction |
| Vague and redacted entries.  *Supra* 13. | 20% reduction |
| Travel time.  *Supra* 13. | 5% reduction |
| Administrative and clerical tasks.  *Supra* 14. | 467 hours reduction |
| Fees-on-Fees.  *Supra* 15. | No additional hours |

Dated: December 1, 2024                                  Respectfully Submitted,
                                                           */s/ Jaime L.M Jones*
                                                           *Counsel for DaVita Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December 2024, I electronically filed Defendants' Opposition to Plaintiff's Petition for Attorney's Fees using the CM/ECF system, which served a notice of electronic filing on the following counsel:

| | |
|---|---|
| Matthew Anders Moore<br>CONSTANTINE CANNON LLP<br>6 East 43rd Street<br>26th Floor<br>New York, NY 10017<br>212-350-2721<br>Email: mmoore@constantinecannon.com<br><br>*Counsel for Relator* | Lila Marie Bateman<br>U.S. ATTORNEY'S OFFICE<br>District of Colorado<br>1801 California Street, Suite 1600<br>Denver, CO 80202<br>Phone: (303) 454-0112<br>Email: lila.bateman@usdoj.gov<br><br>*Counsel for USA* |

*/s/ Jaime L.M. Jones*
Jaime L.M. Jones
Sidley Austin LLP
One South Dearborn
Chicago IL, 60603
Jaime.Jones@sidley.com
Tele: (312) 853-0751

*Counsel for DaVita Inc.*

16